Filed 8/14/14

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>M.G.,<br><br>     Defendant and Appellant. | A139471<br><br>(San Francisco City & County Super. Ct. No. JW 13-6121) |

A petition under Welfare and Institutions Code section 602 charged appellant M.G. with felony carrying of a concealed firearm on his person. Following the juvenile court's denial of his motion to suppress evidence, appellant entered an admission he committed the charged offense, but declined to stipulate the offense was a felony rather than a wobbler. The trial court found otherwise, declared a wardship, and placed appellant with his parent subject to conditions of probation. Appellant contends the judgment must be reversed because (1) the trial court erred in denying his motion to suppress evidence; (2) the court erred following his guilty plea to count 1 by determining his offense was punishable as a felony under Penal Code section 25400, subdivision (c)(4); and (3) the prosecutor erroneously determined he was ineligible for deferred entry of judgment. We agree with the latter two contentions and will reverse and remand for appropriate proceedings to determine whether appellant is suitable for deferred entry of judgment and, if not, whether the offense is a felony or misdemeanor.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A. and II.C.

# I. BACKGROUND

A juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a)) filed on March 29, 2013, alleged that appellant M.G. committed the following offenses: (1) carried a concealed firearm on his person (Pen. Code, § 25400, subd. (a)(2)); (2) carried a loaded firearm on his person in a public place (Pen. Code, § 25850, subd. (a)); and (3) possessed a concealable firearm without the written permission of his parent (Pen. Code, § 29610). Also on March 29, 2013, the prosecutor made an initial determination appellant was ineligible for deferred entry of judgment.[1]

Appellant filed a motion to suppress evidence. (Welf. & Inst. Code, § 700.1.) The motion was heard on April 23, 2013.

## A. *Facts*[2]

### 1. *Prosecution Case*

At 9:08 p.m. on March 27, 2013, San Francisco Police Officer Ryan Doherty, together with Officers DeJesus and Sample, were proceeding on Howard Street, a one-way street, heading toward Seventh Street. The officers were in plainclothes and driving an unmarked patrol car. Officer Doherty was in the front passenger seat. The area was the site of a high number of robberies and "auto boosts."

As the officers crossed Moss Street, Officer Doherty saw four individuals at the corner of Moss and Howard. It appeared three of them were surrounding the fourth, whose back appeared to be up against a building. The individuals seemed to be looking up and down the block as the officers passed through the intersection, leading Doherty to believe there might be a crime in progress. The officers thought the person surrounded could be a robbery victim. One of the other three, the only one wearing a backpack, was appellant. Appellant was standing at a 3:00 o'clock position in relation to the individual against the building, assuming the latter was at the 12:00 o'clock position.

---

[1] The People concede in this case the determination was erroneous, but maintain appellant forfeited the issue by failing to timely object. The issue is discussed *post*.

[2] The facts are from the April 23, 2013 suppression hearing.

As the officers passed the intersection, Officer DeJesus, the driver, said, "Did you see those guys?" DeJesus stopped the vehicle out of view of the four individuals so that Officer Doherty could get out of the car and approach them on foot. Officer Sample got out of the car with Doherty. To avoid a possible foot chase, Officer DeJesus backed the car to the intersection of Moss and Howard as Doherty was about to walk around the corner. He did not activate his siren or emergency lights.

Officer Doherty turned the corner to make contact with the four individuals. His primary concern was to protect the person he thought was a robbery victim. The four juveniles appeared to be surprised when he said, "Police." Officer Doherty was wearing his badge around his neck, but was not sure he had pulled it out when he first approached. The four began to retreat toward the wall. Standing in the same location where Officer Doherty first saw him, appellant "was looking all around," which is a "common sign" to Officer Doherty of "someone that is looking to run away." At some point during the initial contact, Officer DeJesus got out of the car and joined Officers Doherty and Sample.

Officer Doherty asked, "Hey, what's going on here? You guys okay?" No one answered the question. Standing about four or five feet from the officer, appellant announced, "I'm not on probation." Because Officer Doherty had not asked appellant about his probation status, the officer believed appellant "was trying to hide something." Without being commanded to, appellant and the others continued to retreat to the wall. Noticing appellant "was still looking around," Officer Doherty asked if he was carrying a weapon. Appellant responded, "You can't search me." Officer Doherty observed appellant was wearing loose-fitting clothing in which "you could easily conceal a weapon." He found appellant's statements evasive and considered his failure to answer the question whether or not he had a weapon indicative that he could be hiding something. Accordingly, Officer Doherty decided to patsearch him while the officers conducted their investigation.

Officer Doherty placed appellant in "a high profile cursory search" position, with appellant's hands behind his head. As the officer moved his hand down appellant's body

to search for any bulky object that might be a weapon, appellant "began to shift around, and it appeared that he did not want [the officer] searching him." Officer Doherty believed appellant was trying to deter the officer from searching him. Based on this, and appellant's evasive actions from the beginning of the encounter, the officer interrupted his search and handcuffed appellant. He feared appellant "might possibly have a weapon" and believed his safety required placing appellant in handcuffs while he searched. Officer Doherty continued the search without resistance.

During the search, Officer Doherty picked up appellant's backpack from its top to frisk his rear waistband. The officer could feel that the backpack "had . . . some weight in it." When Officer Doherty unzipped the backpack, appellant said, "You can't search my backpack." The officer believed the backpack might contain a weapon because "it didn't appear or feel like . . . there were books in the backpack."

Officer Doherty found a firearm in the backpack. He found six .22-caliber bullets wrapped in a clear plastic baggie in an interior pocket.

Some time after the firearm was found, when all four juveniles were sitting on the curb, it became apparent to the officers "these were four friends" and no robbery had occurred.

### 2. *Defense Case*

Calvin P. was one of the other three minors with M.G on the night of March 27, 2013. Calvin testified he, M.G., and the two other minors were all close friends. All four friends were on spring break on the date of M.G.'s arrest. Calvin was talking with M.G. and his other two friends when three officers in regular clothes he took to be "narcs" approached Calvin.

Before the officers approached, Calvin, M.G., and his two other friends were standing in the alley in back of the building on the corner of Moss and Howard. Calvin at first testified his back was not against the building but close to it. First, Calvin and his friends were chatting in a circle but ended up in a line when the police came. Calvin could not remember if any of his three friends had his back against the building wall before the officers approached them.

4

The first of the plainclothes officers who approached Calvin and his three friends was Officer Doherty. Officer Doherty approached closest to M.G. M.G. was closest to the corner. After Officer Doherty approached the group, Calvin saw him "grab[]" M.G. Calvin testified Doherty said, "What are you guys doing here?" or "What are you doing?" before grabbing M.G. Later in his testimony, he stated Doherty asked the group what was going on after putting his hands on M.G.

Officer Doherty also told Calvin and his two other friends not to move and started to search them. Another officer searched Calvin. While they were being "grabbed," Calvin heard M.G. tell Officer Doherty he was not on probation. Officer Doherty opened the backpack and found a firearm.

Officer Doherty did not ask Calvin or any of his three friends if they were all right or about their well-being. Calvin initially asked one of the officers if he could sit down "because my legs were tired." One of the male officers, not necessarily Officer Doherty, said, "No."

## B. *Trial Court Rulings*

The trial court denied the motion to suppress. The juvenile court found the officers' decision to stop was motivated by the observations of an apparent robbery in a high-crime area at night. As Officer Doherty approached the minors, the court found appellant was "looking around and . . . backing up towards the building." It appeared to Officer Doherty that appellant "was seeking to leave that area."

The court found that when Officer Doherty asked whether appellant had a weapon, the latter responded, "You can't search me," which led the officer to believe the minor was hiding something. Additionally, "the officer was concerned based upon the fact that the minor was wearing loose-fitting clothing which could conceal a weapon." The court considered the patsearch for weapons "a reasonable action to protect [Officer Doherty] and the other officers that were there," based on what had occurred to that point. In the course of "pat searching the minor's body, [the officer] went to move the backpack[,] felt the backpack was heavy and not heavy with books, but heavy with another object, which he thought might be a weapon." Officer Doherty's search of the backpack was a

"reasonable action in the sense that he would certainly [have] the right to protect himself while conducting the investigation and for his safety." The court found no Fourth Amendment violation because all of the officer's actions were reasonable.

Immediately following the ruling, appellant admitted a violation of Penal Code section 25400, subdivision (a)(2). Upon the district attorney's motion, the court dismissed counts 2 and 3 of the petition. M.G.'s juvenile court counsel stipulated to the factual basis for the admission, but when the court inquired as to the maximum custodial time for the offense, counsel stated she would stipulate for purposes of the plea to a maximum custody time of three years if the application of Penal Code section 25400, subdivision (c)(4)[3] was upheld on appeal, but would not stipulate M.G.'s offense was in fact punishable under that subdivision.

On July 10, 2013, the court declared appellant a ward and placed him on probation subject to various terms and conditions. Appellant filed a timely notice of appeal.

## II.  DISCUSSION

Appellant contends the judgment must be reversed in whole or part because (1) the trial court erred in denying his motion to suppress evidence; (2) the court erred following his guilty plea to count 1 by determining his offense was punishable as a felony under Penal Code section 25400, subdivision (c)(4); and (3) the prosecutor erroneously determined he was ineligible for deferred entry of judgment. We find merit in the latter two contentions.

### A.  *Motion to Suppress*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. We review the court's resolution of the factual inquiry under the deferential substantial-evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent

---

[3] In relevant part, Penal Code section 25400, subdivision (c)(4) makes violation of section 25400, subdivision (a)(2) punishable as a felony "[i]f the person is not in lawful possession of the firearm . . . ."

6

review." (*People v. Saunders* (2006) 38 Cal.4th 1129, 1133–1134.)  When a motion to suppress has been denied, we must view the evidence in the light most favorable to the order denying suppression.  (*People v. Colt* (2004) 118 Cal.App.4th 1404, 1407.)  This standard of review is equally applicable to juvenile court proceedings.  (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)

In our view, the search here was reasonable under Fourth Amendment standards based on the facts found by the trial court, all of which were supported by substantial evidence.  A police officer may get out of his patrol vehicle and approach a person on the street without necessarily implicating the Fourth Amendment.  (*People v. Rivera* (2007) 41 Cal.4th 304, 309.)  In this case, the initial contact with appellant and the other three juveniles could be described as a consensual encounter to check on the welfare of the individual Officer Doherty thought might be the victim of a robbery.  At nighttime in an area known for robberies, the officers spotted three males surrounding another male whose back was against a wall.  The males were looking up and down the block, potentially indicative of a crime in progress.  Based on these observations and circumstances, the officers acted reasonably in stopping and approaching to check on the welfare of the individual up against the wall.

The officers were in plainclothes, in an unmarked vehicle, and no emergency lights or sirens were activated.  Doherty announced he was "Police" and inquired generally what was going on.  At that point, there had been no display of authority sufficient to indicate a detention.  The officers did not brandish weapons, block exits, or issue commands.  (See *United States v. Drayton* (2002) 536 U.S. 194, 204.)  Even Doherty's subsequent question to appellant whether he had a weapon cannot be construed as a show of authority converting the encounter into a detention.  (*Id.* at pp. 199, 204 [police did not seize bus passengers when they boarded bus and questioned them about whether they had weapons or drugs].)

However, even assuming for the sake of analysis that Officer Doherty's initial contact with appellant and the others constituted a detention—or became one when, according to appellant's theory, he manifested lack of consent through his eye

7

movements and retreat from the officer—the detention was justified. The previously cited factors justifying the contact—the time and place, the positioning of the males, their monitoring of the surroundings—also justified a detention based on the officer's reasonable suspicion that a robbery was being committed. (See *People v. Souza* (1994) 9 Cal.4th 224, 231, 240–241 [detention is reasonable under the Fourth Amendment when the detaining officer can point to a particularized, objective basis for suspecting the person detained may be involved in criminal activity; area's reputation for criminal activity and time of night are relevant facts]; *Illinois v. Wardlow* (2000) 528 U.S. 119, 124 [incidence of crime in the area and the lateness of the hour are both relevant in determining the legality of a detention].)

Officer Doherty's suspicion of a robbery in progress had not dissipated by the time he initiated the patsearch, as appellant contends. Starting when the officers saw the individuals on the street, the entire encounter lasted not more than a couple of minutes. Doherty testified it was not apparent there had been no robbery until after the weapon was found and the officers were able to determine the four juveniles were all friends. Nothing that occurred up to the initiation of the patsearch should have made this apparent to the officers. When Doherty asked if everything was all right, no one responded, except for appellant who announced he was not on probation. Appellant then retreated from the officer, appeared anxious, and was wearing loose-fitting clothing in which a weapon could be easily concealed. When appellant continued to look around, Doherty asked him if he had a weapon, to which appellant responded, "You can't search me." None of these circumstances would have put Doherty at ease. (See *Illinois v. Wardlow*, *supra*, 528 U.S. at p. 124 [suspect's nervous and evasive behavior is a pertinent factor in determining reasonable suspicion].)

The fact an innocent explanation for appellant's conduct was possible does not preclude the basis for a reasonable suspicion of criminal activity. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.) Resolving that ambiguity and establishing whether the activity is legal or illegal is the principal purpose of a police investigation. (*Id.* at p. 148.) All of the foregoing circumstances, and the reasonable suspicion a robbery had been

interrupted, were in fact indicative that appellant might have a weapon on his person. That fully justified a patsearch in the interest of officer safety. Thus, even on the hypothesis a detention preceded the patsearch, the detention and search were both justified.

The search of appellant's backpack was also justified. When Officer Doherty lifted it by its top handle to check appellant's rear waistband, he felt it had some weight in it, and the backpack did not "appear or feel" like there were books inside. Combined with the other circumstances suggestive that a robbery had been in progress and appellant was being evasive, the otherwise unexplained weight of the backpack gave Doherty reason to believe it might hold a weapon. Nor was it reasonable to expect Doherty, before searching it, to squeeze and manipulate the outside of the backpack to ascertain whether it contained a weapon—potentially a loaded firearm. "[I]t is by no means clear that poking and prodding the outside of a duffel bag is the most sensible way to find [a suspected loaded gun]. No doubt, the frisking of the outside of a bag intrudes less on the privacy of the suspect. But at what cost? Who looks for a [loaded] gun by aimlessly grabbing and manipulating the outside of a large bag that may or may not contain the gun . . . ?" (*U.S. v. Walker* (2010) 615 F.3d 728, 732–733; see also *People v. Ritter* (1997) 54 Cal.App.4th 274, 280 [deputy cannot be faulted for failing to pat down a fanny pack before searching it for a gun during on-the-street investigation of threatening conduct report].) A warrantless protective search during an investigative detention may properly extend to a repository within the suspect's reach that is reasonably suspected of containing a weapon. (*Michigan v. Long* (1983) 463 U.S. 1032, 1049.) Officer Doherty did not violate appellant's Fourth Amendment rights by searching the backpack without a warrant.

Appellant's motion to suppress was properly denied.

## B. *Felony or Wobbler*

Count 1 of the petition alleged appellant committed a felony violation of Penal Code section 25400, subdivision (a)(2), punishable under section 25400, subdivision (c)(4). Section 25400, subdivision (a) provides that a "person is guilty of

9

carrying a concealed firearm when the person does any of the following: [¶] . . . [¶] (2) Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person." Section 25400, subdivision (c)(4) provides that carrying a concealed firearm in violation of subdivision (a)(2) is punishable as follows: "If the person is not in lawful possession of the firearm or the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony."

Following the denial of his motion to suppress, appellant admitted he was in possession of a concealable firearm at the time of the offense, specifically a .22-caliber Ruger. He did not admit the offense was punishable as a felony under Penal Code section 25400, subdivision (c)(4), and contends the juvenile court erred in so finding.[4] He argues the record did not support the only possible finding triggering the application of Penal Code section 25400, subdivision (c)(4)—that he was "not in lawful possession of the firearm."[5]

The term "lawful possession" is defined as follows in Penal Code section 16750: "As used in Section 25400, 'lawful possession of the firearm' means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful

_____

[4] As agreed, the court advised appellant before taking his plea that he could be kept in custody for a maximum term of three years, the default upper term applicable under Penal Code section 18, subdivision (a) when no other punishment is prescribed by law. Because appellant was released to his mother subject to probation, the court's dispositional order did not include a maximum term of confinement. (See Welf. & Inst. Code, § 726, subd. (d); *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541.)

[5] The People do not suggest any of the alternative felony grounds mentioned in subdivision (c)(4) of Penal Code section 25400 are applicable.

10

custody of the firearm does not have lawful possession of the firearm." (Pen. Code, § 16750, subd. (a).)

Appellant maintains that by virtue of Penal Code section 16750, his carrying of a concealed weapon could only be punished as a felony if he was not the lawful owner of the firearm, did not have permission of the lawful owner to possess the firearm, or otherwise did not have apparent authority to possess or have custody of the firearm. Since the predicate facts for punishing the offense as a felony were neither admitted nor shown on the record, he contends the trial court erred in imposing a maximum confinement time of three years. The People counter that section 16750 must be read in conjunction with Penal Code section 29610, which provides: "A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person." According to the Attorney General, section 29610 means that a minor cannot lawfully possess or own a concealable firearm, and therefore appellant's plea that he was a minor in possession of a concealable firearm constituted an admission his possession was unlawful within the meanings of sections 16750 and 29610. Therefore, the offense was properly considered a felony punishable under section 25400, subdivision (c)(4).

We are not persuaded. First, it is significant the Legislature included no express language subjecting minors to automatic felony punishment for carrying concealable firearms even though it could easily have done so either in Penal Code section 16750 or section 25400. Section 16750, which expressly defines the term "lawful possession" for purposes of section 25400, subdivision (c)(4) makes no reference to minors. Even assuming a minor cannot himself be a lawful owner of a firearm, section 16750 by its own express terms creates no exception to lawful possession when the minor has possession or custody of a firearm with the lawful owner's permission.

It is even more significant in divining legislative intent that Penal Code section 25400, subdivision (c)(4) expressly declares it a felony for persons subject to

11

either chapter 2 or chapter 3 of division 9, title 4[6] of the Penal Code to carry concealable weapons, but omits any mention of persons subject to chapter 1 of division 9. Chapters 2 and 3 describe persons who have been convicted of certain offenses. Chapter 1 is entitled "Juvenile" and happens to contain Penal Code section 29610. It is the only chapter in division 9 describing a particular class of persons that is omitted from subdivision (c)(4) of Penal Code section 25400. Moreover, if the term "lawful possession" automatically excludes minors by virtue of section 29610, there is no reason it would not also automatically exclude *all* persons whose possession of a firearm is made unlawful by statute. If so, section 25400, subdivision (c)(4)'s specific references to chapters 2 and 3 (as well as to sections 8100 and 8103 of the Welfare and Institutions Code) would be entirely superfluous. Interpretations that render statutory terms meaningless as surplusage are to be avoided. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1010.)

Legislative Counsel's description of the operative amendments also guides our analysis. The language now found in Penal Code section 25400, subdivision (c)(4) and the definition of lawful possession in section 16750 were originally added to Penal Code former section 12025 in 1996, as part of Assembly Bill No. 632. (Historical and Statutory Notes, 51D West's Ann. Pen. Code (2000 ed.) foll. § 12025, p. 219; Stats. 1996, ch. 787, § 2, pp. 4152–4153.) Legislative Counsel's Digest of the bill explained the amendments made the "offense [(possession of a concealable firearm)] punishable only as a felony in the circumstance where . . . the person is not in lawful possession of the firearm, *as defined*, or is within a class of persons prohibited by *specified* provisions from possessing or acquiring a firearm." (Legis. Counsel's Dig., Assem. Bill No. 632 (1995–1996 Reg. Sess.) 6 Stats. 1996, Summary Dig., p. 312, italics added.) The view that section 25400, subdivision (c)(4) automatically applies to any minor violating the concealed firearms statute is thus not supported by the bill digest.[7]

---

[6] Title 4 is entitled "Firearms" and division 9 is entitled "Special Firearm Rules Relating to Particular Persons."

[7] The Legislative Counsel's Digest "constitutes the official summary of the legal effect of the bill and is relied upon by the Legislature throughout the legislative process,"

12

Second, when the Legislature *did* address the punishment of minors found to be in possession of a concealable weapon—in chapter 1 of part 4, division 9 of the Penal Code—it did so in a manner inconsistent with the Attorney General's interpretation of Penal Code section 25400. (See Pen. Code, §§ 29610–29750.) Section 29700, subdivision (a) declares "[e]very minor who violates [section 29610] of this chapter shall be punished" *either* by imprisonment as a felon *or* in a county jail. As appellant points out, holding that minors are automatically subject to section 25400, subdivision (c)(4) would completely undercut what the Legislature was trying to do in section 29700. Instead of having to consider whether the minor's possession of a concealable firearm should be charged as a felony or a misdemeanor, as section 29700 seems to require, prosecutors could simply bypass that requirement by charging and prosecuting minors as felons under section 25400, subdivision (c)(4). By doing so, the prosecutor would also deprive the juvenile court of the discretion and duty it would otherwise have under Welfare and Institutions Code section 702 to determine whether a violation of Penal Code section 25400, subdivision (a)(2) is a felony or a misdemeanor in a particular case.[8]

We see no indication the Legislature intended to reserve all discretion over the classification of concealed firearms violations by minors to the prosecution, or to override or impliedly repeal the specific provisions of law found in chapter 1 of division 9, title 4. "It is . . . settled law that when a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) The special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. (*People v. Gilbert* (1969) 1 Cal.3d 475, 479–480; *Agricultural*

and thus "is recognized as a primary indication of legislative intent." (*Souvannarath v. Hadden* (2002) 95 Cal.App.4th 1115, 1126, fn. 9.)

[8] Welfare and Institutions Code section 702 provides in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." The mere specification in the petition that an offense is a felony, even if admitted by the minor, is insufficient to show that the juvenile court exercised the discretion required by section 702. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191.)

13

*Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420.)" (*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1539.) Here the special act pertaining to minors in possession of a concealable weapon controls over the general statute pertaining to possession.[9]

For these reasons, we find the trial court erred by deeming appellant's offense to be a felony without any proof of or stipulation to facts showing he did not have "lawful possession of the firearm" as specifically defined in Penal Code section 16750, or otherwise would have been subject to mandatory felony punishment had his offense been committed by an adult. Although appellant urges we remand the case to the juvenile court with directions to declare his offense a misdemeanor under section 25400, subdivision (c)(7), we decline to make that direction. For the reasons discussed *post*, we will instead remand for the juvenile court to make a determination of whether appellant's offense is to be classified as a misdemeanor or felony.

The record is replete with facts showing the offense was eligible for treatment as either a misdemeanor or a felony. Appellant does not dispute he has a prior theft conviction. A violation of Penal Code section 25400, subdivision (a)(2) may be punished as a misdemeanor or felony if the offender has committed a "crime against a person or property." (Pen. Code, § 25400, subd. (c)(5).) Under subdivisions (c)(6)(A) and (B) of section 25400, the fact the Ruger was loaded and appellant was not the registered owner would make his offense a wobbler.

Appellant relies on the fact the prosecutor dismissed all but the Penal Code section 25400 count, and that count charged *only* that his violation was a felony punishable under section 25400, subdivision (c)(4). Since we have found that penalty allegation ineffectual as a matter of law, appellant contends his due process right to

---

[9] We note also criminal statutes must be construed as favorably to the defendant as possible. (*Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631.) "[T]he defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute." (*Ibid.*)

notice of the charges against him should preclude any determination by the juvenile court that his offense was a felony based on any ground not alleged in count 1 of the petition.

In our view, appellant had constitutionally sufficient notice of the charge—violation of Penal Code section 25400, subdivision (a)(2)—and of the maximum punishment to which the offense subjected him—a three-year maximum confinement time. Indeed, in admitting to count 1 he expressly accepted the risk this court would affirm the juvenile court's determination his offense was a felony punishable by confinement for three years. It would not violate his due process rights to now remand the case to the juvenile court for a determination under Welfare and Institutions Code section 702 of whether his offense is in fact punishable as a felony, or as only a misdemeanor.

## C. *Deferred Entry of Judgment*

The Attorney General concedes in this case that the prosecutor erroneously determined appellant was ineligible for deferred entry of judgment (DEJ) under Welfare and Institutions Code section 790 et seq.[10] She contends nonetheless that appellant forfeited the issue by failing to object to the finding of ineligibility in the trial court. Although no notice of the prosecutor's ineligibility determination was served on appellant or his trial court counsel, the Attorney General urges the filing of Judicial Council Forms, form JV-750 with the clerk was sufficient notice, and that only a

---

[10] "The DEJ provisions of [Welfare and Institutions Code] section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791, subd. (a)(3); 793, subd. (c).)" (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558.)

15

determination appellant was eligible for DEJ was required by law to be served. (See Cal. Rules of Court, rule 5.800.)

We decline to deem the matter forfeited, and will order that upon remand appellant be afforded an opportunity to seek a determination of his suitability for DEJ if he so elects.

## III. DISPOSITION

The findings and dispositional orders are set aside and the matter is remanded to the juvenile court for further proceedings in compliance with Welfare and Institutions Code section 790 et seq. and California Rules of Court, rule 5.800. If, as a result of those proceedings, the juvenile court grants DEJ to appellant, it shall issue an order vacating the findings and orders. If appellant does not admit the allegations of the petition or the juvenile court denies DEJ in the exercise of its discretion, then the juvenile court shall (1) exercise its discretion under section 702 and expressly declare whether it is determining count 1 to be a felony or misdemeanor and (2) otherwise reinstate its previous jurisdictional and dispositional orders.

16

_____
Margulies, Acting P.J.

We concur:


_____
Banke, J.


_____
Becton, J.[*]

A139471
*In re M.G.*

_____
[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Susan M. Breall

Counsel:

Jeffrey A. Needelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Assistant Attorneys General, Eric D. Share and Ronald E. Niver, Deputy Attorneys General for Plaintiff and Respondent.