Filed 2/23/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,  Plaintiff and Respondent,  v.  D.D.,  Defendant and Appellant. | A140704  (San Francisco City and County Super. Ct. No. JW13-6403; Alameda County Super. Ct. No. SJ11017913) |

Police officers detained and searched D.D. and a companion after observing them apparently smoking marijuana in a private parking area. D.D. was found to be in possession of a concealed loaded handgun and charged by petition with violation of Penal Code sections 25400, subdivision (a)(2), and 25850, subdivision (a).[1] D.D.'s motion to suppress the evidence was denied, and the petition's allegations were found true. The juvenile court also found the offenses to be mandatory felonies pursuant to subdivision (c)(4) of sections 25400 and 25850. In the published portion of this opinion we conclude that D.D.'s offenses were not automatically felonies by virtue of his status as a minor, and therefore we reverse and remand for the juvenile court to determine the applicable subdivisions of sections 25400 and 25850 and designate the offenses as either misdemeanors or felonies accordingly. In the nonpublished portion of the opinion, we

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A. and II.C.

[1] Undesignated statutory references are to the Penal Code.

affirm the denial of D.D.'s motion to suppress and strike the designation of a maximum term of confinement from the disposition order.

## I. BACKGROUND

On November 5, 2013, the San Francisco District Attorney filed a Welfare and Institutions Code section 602, subdivision (a) juvenile wardship petition on behalf of D.D., alleging he violated sections 25850, subdivision (a) (carrying a loaded firearm in public) and 25400, subdivision (a)(2) (carrying a concealed firearm). Both offenses were identified as felonies on the petition. D.D.'s motion to suppress evidence was heard in conjunction with the jurisdictional hearing (Hon. Susan M. Breall), and the following evidence was adduced.

On November 1, 2013, San Francisco Police Officer Duncan Duffin and his partner, Francisco Chicas, were working as a robbery abatement team. A series of armed and unarmed robberies had been committed within two blocks of the Glen Park and Balboa Park BART stations, mostly by young males (teenaged or in their early 20's) who were wearing loose-fitting dark-colored hooded sweatshirts or pullovers and pants. At about 4:00 p.m., the uniformed officers were patrolling the area around the Balboa Park station in an unmarked vehicle. They saw two teenaged males wearing hooded sweatshirts and blue jeans standing in front of a parked Pontiac Grand Prix in a San Francisco Municipal Railway (Muni) employee parking lot near a Muni maintenance yard. The lot had signs indicating it was for Muni employees only and prohibiting trespassing.

The officers pulled over, and Duffin noticed smoke in the vicinity of the young men (D.D. & K.H.). He also saw D.D. look directly at the officers and then turn and enter the front passenger's side of the Grand Prix. As the officers exited their car and approached the young men, Duffin smelled a strong odor of marijuana. He asked K.H., "Who has got the weed?" K.H. admitted having marijuana.

Duffin motioned with his hand for D.D. to exit the Grand Prix. When D.D. got out, Duffin asked for his name and identification. D.D. provided a false name[2] and said he did not have identification. Dispatch had no record for the name given by D.D. D.D. was advised that Duffin and Chicas were investigating a series of robberies in the area. D.D. denied having any weapons on his person and did not tell Duffin who owned the Grand Prix. When asked why he was on Muni property, D.D. answered hesitantly and avoided the question. D.D. appeared apprehensive and nervous, and he kept looking left and right up and down the street without making eye contact with Duffin. As D.D. moved around, he kept repositioning his right hip away from Duffin: D.D. stood in a bladed stance, with one foot forward and one foot in the back at about a 45 degree angle and, as Duffin moved, he would pivot so his right hip was always pointed away from the officer. Duffin testified that, based on his experience and training, he believed D.D. was carrying a weapon at his right hip.

Duffin decided to search D.D. for weapons out of concern for the officers' safety. D.D. placed his hands on the back of his head, and Duffin used his left hand to secure D.D.'s hands. Using his right hand, Duffin lifted the right side of D.D.'s sweatshirt and saw a semiautomatic black handgun at D.D.'s right hip, tucked in his waistband. Duffin removed the gun, placed it on the ground, and arrested D.D. Chicas examined the gun, a semiautomatic nine-millimeter Glock pistol, and determined that it was loaded with a live round in the chamber. It was stipulated that D.D. was 15 years old at the time of the incident.

Judge Breall expressly found Duffin credible, denied D.D.'s motion to suppress, and found the petition's allegations true. The court then found that the crimes were mandatory felonies pursuant to subdivision (c)(4) of sections 25400 and 25850. The case was transferred to the Alameda County Superior Court for disposition, where Judge Armando G. Cuellar, Jr., placed D.D. on probation and released him live with his mother

---

[2] D.D. apparently was wanted at the time on an outstanding no bail warrant from Alameda County.

3

on electronic monitoring. Judge Cuellar also declared an eight-year maximum term of confinement.

## II. DISCUSSION

### A. *Motion to Suppress*[**]

D.D. argues the juvenile court erred by denying his motion to suppress. We affirm.

On review of an order denying a motion to suppress, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"The Fourth Amendment to the United States Constitution prohibits seizures of persons, including brief investigative stops, when they are 'unreasonable.' (*Terry v. Ohio* (1968) 392 U.S. 1, 19 & fn. 16; [citation].) Our state Constitution has a similar provision. (Cal. Const., art. I, § 13.) . . . [¶] . . . Because the 'intrusion upon the sanctity of the person' consists not only of the patdown itself but also of the temporary detention during which the patdown occurs, . . . 'the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop.' [Citation.] [¶] . . . [¶] . . . A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 229–231, italics & parallel citations omitted.) "[A]n officer has the authority to conduct a reasonable search for weapons where that officer has reason to believe a suspect is armed and dangerous, regardless of whether he has probable cause to arrest the individual for a crime. [Citation.] . . . [T]he officer need not be absolutely certain that the individual is armed; the crux of the issue is whether a reasonably prudent person in the totality of the circumstances would be

---

[**] See footnote *, *ante*, page 1.

4

warranted in the belief that his or her safety was in danger. [Citation.]" (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.)

Judge Breall found that Duffin and Chicas saw two young men standing in a nonpublic Muni parking area, observed smoke near the men, and smelled marijuana. These facts provided some objective manifestation that D.D. and K.H. might have been trespassing and smoking marijuana, thus justifying an investigatory detention.[3] Additional facts cited by the court—that D.D. and K.H. were in the general vicinity of a recent spate of robberies and were in clothing and of an age group that generally corresponded with descriptions of the robbers—added to the officers' reasonable suspicion of criminal activity.

D.D. argues the evidence did "not support a finding that marijuana was being smoked" or that he was smoking marijuana. To support an investigatory detention, however, officers need not have evidence proving or providing probable cause that a crime was being committed, but merely objective facts manifesting possible criminal activity. Duffin's observation of smoke and the odor of marijuana in the vicinity of the two young men satisfied that standard. D.D. invokes the rule that "a defendant's mere proximity to a person suspected of criminal conduct does not itself provide grounds also to suspect the defendant of wrongdoing. [Citation.]" (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 382.) However, the juvenile court did not find that K.H. was smoking marijuana alone. Rather, the court found that Duffin saw smoke and smelled marijuana in the vicinity of both minors. The officer therefore had objective grounds to suspect both D.D. and K.H. of criminal activity. D.D. argues that once K.H. said he possessed the marijuana, the officers no longer had any basis to suspect D.D. of smoking

---

[3] The juvenile court stated that the aforementioned facts were "not enough to detain these two young men, . . . [although] there is enough to go up and investigate what these young men or young adults are doing . . . ." Officers need no reasonable suspicion to approach persons in public. (*Florida v. Royer* (1983) 460 U.S. 491, 497; *People v. Rivera* (2007) 41 Cal.4th 304, 309.) They need reasonable suspicion to *detain* persons for the purpose of investigation, and the facts found by the court are sufficient to establish reasonable suspicion for such a detention.

or possessing marijuana. The statement by K.H., however, hardly exonerated D.D. from use or possession of marijuana. Moreover, it did not explain D.D.'s presence in a restricted parking area. The officers were justified in continuing their investigatory detention of D.D.

D.D. also argues evidence of trespassing was insufficient because he and K.H. could have been Muni employees. Given the suspects' young age, casual clothing, and apparent leisurely, lingering behavior smoking in front of a parked car, the officers had objective grounds to suspect D.D. and K.H. were not Muni employees with a legitimate reason to be present in the parking area, but were knowing trespassers on the clearly-marked private lot. The officers certainly had more than sufficient reason to investigate and determine whether D.D. and K.H. had legitimate reason to be in the restricted area.

Finally, D.D. argues his act of getting into the Grand Prix after noticing the officers did not support the investigatory detention. Whether this factor alone would have raised any reasonable suspicion is irrelevant. We do not look at any one factor in isolation because the totality of circumstances determines the legality of a detention. (*United States v. Cortez* (1981) 449 U.S. 411, 417.) We have already concluded the officers had grounds to detain D.D. based on his presence in the restricted parking area and the sight and odor of marijuana smoke.

The court ruled that "the repositioning of this young man's right hip away from the officer" established Duffin's right to search D.D. for a weapon. "The minor is hesitant, he is apprehensive, according to the officer. He is keeping his right hip away from the officer. He keeps pivoting, he keeps moving. [¶] [Duffin] feels, based on his training and experience, there [was] a possible weapon on [D.D.'s] right hip." We agree that these facts gave Duffin reason to believe D.D. might be armed and that the officers' safety was in jeopardy. (*People v. Avila, supra,* 58 Cal.App.4th at p. 1074.)

D.D. argues that, even if a search was justified to protect the officers' safety, the scope of the search exceeded that purpose, thus rendering it unreasonable. Specifically, Duffin is faulted for lifting D.D.'s shirt rather than patting him down. We disagree that the scope of the search was unreasonable. Lifting the side of a suspect's shirt to expose a

waistband is not clearly more of an " 'intrusion upon the sanctity of the person' " than a full patdown of a suspect's body and groin, the usual form of a *Terry* stop and frisk. (See *People v. Souza, supra,* 9 Cal.4th at p. 229.) In any event, the search's scope was clearly harmless because D.D. does not dispute that a patdown would have disclosed the gun's presence and resulted in its retrieval. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1040 ["[e]vidence need not be suppressed if the prosecution can establish by a preponderance of the evidence that the information would inevitably have been discovered by lawful means"].)

B.      *Designation of D.D.'s Offenses as Felonies*

D.D. argues that the San Francisco juvenile court erred in designating his offenses as felonies. He argues the court misinterpreted the statutory scheme and erroneously concluded that the offenses were mandatory felonies. He further argues the case must be remanded to redesignate the offenses as either felonies or misdemeanors. We agree.

We decide issues of statutory interpretation de novo. (*In re M.W.* (2008) 169 Cal.App.4th 1, 4.)

1.      *Statutory Scheme*

Section 25400 provides: "(a) A person is guilty of carrying a concealed firearm when the person does any of the following: [¶] . . . [¶] (2) Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person. [¶] . . . [¶] (c) Carrying a concealed firearm in violation of this section is punishable as follows: [¶] . . . [¶] (4) *If the person is not in lawful possession of the firearm or the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2* (*commencing with Section 29800*) *or Chapter 3* (*commencing with Section 29900*) *of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony*. [¶] . . . [¶] (6) If both of the following conditions are met, by imprisonment pursuant to subdivision (h) of Section 1170, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment: [¶] (A) The pistol, revolver, or other firearm capable of being concealed upon the person is loaded, or both it and the unexpended

7

ammunition capable of being discharged from it are in the immediate possession of the person or readily accessible to that person. [¶] (B) The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person. [¶] (7) In all cases other than those specified in paragraphs (1) to (6), inclusive, by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine." (Italics added.)

In other words, a violation of section 25400 is a felony offense under subdivision (c)(4), a misdemeanor offense under subdivision (c)(7), and an alternate felony/misdemeanor, commonly known as a "wobbler" offense[4] under subdivision (c)(6).

Section 25850, subdivision (a) provides: "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." Subdivision (c) of section 25850 is substantively identical to subdivision (c) of section 25400 except the phrase "concealed firearm" is replaced with "loaded firearm" and section 25850, subdivision (c) does not include the language in section 25400's subdivision (c)(6)(A). As with section 25400, section 25850 may be a felony, a misdemeanor, or a wobbler depending on the circumstances.

"As used in Section 25400, 'lawful possession of the firearm' means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm." (§ 16750, subd. (a).) As used in section 25850, " 'lawful possession of the firearm' means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the

---

[4] See *People v. Statum* (2002) 28 Cal.4th 682, 685 (wobbler offenses are deemed felonies unless charged as misdemeanors or reduced to misdemeanors in the court's sentencing discretion).

firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm." (§ 16750, subd. (b).)

Additional statutes govern possession of firearms and ammunition by minors. Section 29610 provides that "[a] minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person,"[5] and violation this statute is a wobbler, punishable "[b]y imprisonment pursuant to subdivision (h) of Section 1170 or in a county jail." (§ 29700, subd. (a)(3).) Section 29650 prohibits minors from possessing live ammunition, and section 29655 establishes exceptions similar to those in section 29615. A violation of section 29650 is a misdemeanor or, if certain prior offenses are proved, a wobbler. (§ 29700, subd. (a)(1)–(2), (b).)

2.    *Juvenile Court Proceedings*

The prosecutor argued that D.D.'s violations of sections 25400, subdivision (a)(2) and 25850, subdivision (a) were mandatory felonies under subdivision (c)(4) of each section. He argued D.D. was "not in lawful possession of [the] firearm or . . . [wa]s within a class of persons prohibited from possessing or acquiring a firearm" because, as a minor, D.D. was prohibited from possessing the gun pursuant to section 29610 and none of the exceptions of section 29615 were applicable.

D.D. argued section 29610 could not support application of subdivision (c)(4) of either section 25400 or 25850, because section 29610 has its own punishment provision (§ 29700 [designating it a wobbler offense]). Instead, violations of sections 25400 and 25850 were punishable either as wobblers or as mandatory misdemeanors under subdivisions (c)(6) or (c)(7) of the respective statutes.

Judge Breall found, "Count one, [D.D.] did commit a felony, a violation of section 25850(a) . . . in that the minor did unlawfully carry a loaded firearm . . . on his person while in a public place, . . . [*which*] *is punishable under . . . section 25850(c)(4).* [¶] . . . I am not exercising any punishment here. . . . But I am making that finding, and I

_____

[5] Exceptions to section 29610 include recreational activities when accompanied by a parent or by a responsible adult with prior written consent of the parent. (§ 29615, subds. (a), (b).)

9

believe I have to do that as I am reading the case law. [¶] I also find the offense is a felony, *it is a non-wobbler*. I also find that the allegation . . . in count 2 has been proven beyond a reasonable doubt, and it is a felony. And I understand these cases can be charged as felonies or misdemeanors. And I should state that I know that and I understand that, for the record, and *I understand my discretion for the record*. [¶] But I am finding that this is a felony, a violation of section 25400(a)(2) . . . and that the minor did unlawfully carry[,] concealed upon his person, a firearm . . . , which is *punishable under . . . section 25400(c)(4)*. [¶] *I do find that he is in a class of people prohibited from owning or possessing such a firearm . . . .*" (Italics added.)

These statements are far from clear. While the juvenile court seemed to indicate that it was exercising discretion in finding the offenses to be felonies, it then explicitly applied subdivision (c)(4) of both sections 25400 and 25850, which mandate felony treatment, apparently relying on section 29610's prohibition of possession of a concealable firearm by a minor. We conclude that the court erred in doing so. We find on the factual basis of this record that the court was instead required to determine if the requirements of subdivision (c)(6) of sections 25400 and 25850 were met, and if so, whether to declare the offenses felonies or misdemeanors, in its discretion. If those requirements were not met, the offenses would be mandatory misdemeanors under subdivision (c)(7) of sections  25400 and 25850.

3.    *Applicability of Subdivision (c)(4) of Sections 25400 and 25850 to Minors*

Recently Division One of this court ruled that a defendant is not a "person not in lawful possession of the firearm or . . . within a class of persons prohibited from possessing or acquiring a firearm" within the meaning of section 25400, subdivision (c)(4) simply because he or she is a minor prohibited from possessing a concealable firearm pursuant to section 29610. (*In re M.G.* (2014) 228 Cal.App.4th 1268, 1274–1278 (*M.G.*).)[6] We find the rationale of *M.G.* persuasive.

---

[6] *M.G.* had not been decided when the juvenile court issued its order in this matter.

10

In *M.G.*, the minor admitted possessing a concealed firearm, a violation of section 25400, subdivision (a)(2), and the juvenile court found the offense to be punishable as a felony under subdivision (c)(4) of the statute. (*M.G., supra,* 228 Cal.App.4th at p. 1274.) In its examination of section 25400, subdivision (c)(4), the Court of Appeal explained: "First, it is significant the Legislature included no express language subjecting minors to automatic felony punishment for carrying concealable firearms even though it could easily have done so either in . . . section 16750 or section 25400. Section 16750, which expressly defines the term 'lawful possession' for purposes of section 25400, subdivision (c)(4) makes no reference to minors. Even assuming a minor cannot himself be a lawful owner of a firearm, section 16750 by its own express terms creates no exception to lawful possession when the minor has possession or custody of a firearm with the lawful owner's permission.

"It is even more significant in divining legislative intent that . . . section 25400, subdivision (c)(4) expressly declares it a felony for persons subject to either chapter 2 or chapter 3 of division 9, title 4, part 6 of the Penal Code to carry concealable weapons, but omits any mention of persons subject to chapter 1 of division 9. Chapters 2 and 3 describe persons who have been convicted of certain offenses. Chapter 1 is entitled 'Juvenile' and happens to contain . . . section 29610. It is the only chapter in division 9 describing a particular class of persons that is omitted from subdivision (c)(4) of . . . section 25400. Moreover, if the term 'lawful possession' automatically excludes minors by virtue of section 29610, there is no reason it would not also automatically exclude *all* persons whose possession of a firearm is made unlawful by statute. If so, section 25400, subdivision (c)(4)'s specific references to chapters 2 and 3 (as well as to sections 8100 and 8103 of the Welfare and Institutions Code) would be entirely superfluous. Interpretations that render statutory terms meaningless as surplusage are to be avoided. [Citation.]

"The Legislative Counsel's description of the operative amendments also guides our analysis. The language now found in . . . section 25400, subdivision (c)(4) and the definition of lawful possession in section 16750 were originally added to . . . former

section 12025 in 1996, as part of Assembly Bill No. 632 (1995–1996 Reg. Sess.). (Historical and Statutory Notes, 51D West's Ann. Pen.Code (2000 ed.) foll. § 12025, p. 219; Stats. 1996, ch. 787, § 2, pp. 4152–4153.)  The Legislative Counsel's Digest of the bill explained the amendments made the 'offense [(possession of a concealable firearm)] punishable only as a felony in the circumstance where . . . the person is not in lawful possession of the firearm, *as defined*, or is within a class of persons prohibited by *specified* provisions from possessing or acquiring a firearm.'  (Legis. Counsel's Dig., Assem. Bill No. 632 (1995–1996 Reg. Sess.) 6 Stats. 1996, Summary Dig., p. 312, italics added.)  The view that section 25400, subdivision (c)(4) automatically applies to any minor violating the concealed firearms statute is thus not supported by the bill digest.

"Second, when the Legislature *did* address the punishment of minors found to be in possession of a concealable weapon—in chapter 1, division 9 of title 4, part 6 the Penal Code—it did so in a manner inconsistent with the Attorney General's interpretation of . . . section 25400.  (See . . . §§ 29610–29750.)  Section 29700, subdivision (a) declares '[e]very minor who violates [section 29610] of this chapter shall be punished . . .' *either* by imprisonment as a felon *or* in a county jail.  As appellant points out, holding that minors are automatically subject to section 25400, subdivision (c)(4) would completely undercut what the Legislature was trying to do in section 29700.  Instead of having to consider whether the minor's possession of a concealable firearm should be charged as a felony or a misdemeanor, as section 29700 seems to require, prosecutors could simply bypass that requirement by charging and prosecuting minors as felons under section 25400, subdivision (c)(4).  By doing so, the prosecutor would also deprive the juvenile court of the discretion and duty it would otherwise have under Welfare and Institutions Code section 702 to determine whether a violation of . . . section 25400, subdivision (a)(2) is a felony or a misdemeanor in a particular case.

"We see no indication the Legislature intended to reserve all discretion over the classification of concealed firearms violations by minors to the prosecution, or to override or impliedly repeal the specific provisions of law found in chapter 1 of division 9, title 4, part 6.  'It is . . . settled law that when a special and a general statute

are in conflict, the former controls. (Code Civ. Proc., § 1859.) The special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. [Citations.] Here the special act pertaining to minors in possession of a concealable weapon controls over the general statute pertaining to possession." (*M.G., supra,* 228 Cal.App.4th at pp. 1276–1278, fns. omitted.)

We agree with *M.G.*'s analysis of section 25400, subdivision (c)(4) and hold that it applies to section 25850, subdivision (c)(4) as well. Similar to section 25400, the Legislature included no express language in section 25850 subjecting minors to automatic felony punishment for carrying loaded firearms even though it could easily have done so.[7] Subdivision (c)(4) of both sections expressly declare it a felony for persons with certain mental disorders or prior convictions to carry concealed or loaded firearms, but make no mention of minors who are generally prohibited from possessing concealable firearms (§ 29610) or live ammunition (§ 29650). When the Legislature addressed punishment of minors found to be in possession of a concealable firearm or live ammunition, it declared those violations to be punishable as wobblers or misdemeanors. (§ 29700.) Thus, in the words of *M.G.*, "holding that minors are automatically subject to section [25850], subdivision (c)(4) would completely undercut what the Legislature was trying to do in section 29700. Instead of having to consider whether the minor's possession of a [loaded] firearm should be charged as a felony or a misdemeanor, as section 29700 seems to require, prosecutors could simply bypass that requirement by charging and prosecuting minors as felons under section [25850], subdivision (c)(4). By doing so, the prosecutor would also deprive the juvenile court of the discretion and duty it would otherwise have under Welfare and Institutions Code

---

[7] We note also that the language now found in sections 25400 and 25850 first appeared in the same bill that amended their predecessor statutes (former §§ 12025, 12031, as amended by Stats. 1996, ch. 787, §§ 2–3, pp. 4152–4159), and the Legislative Counsel's description of the operative amendment to section 25850's predecessor statute explicitly references and parallels its description of the amendment to section 25400's predecessor (Legis. Counsel's Dig., Assem. Bill No. 632 (1995–1996 Reg. Sess.) 6 Stats. 1996, Summary Dig., p. 312).

section 702 to determine whether a violation of [section 25850, subdivision (a)] is a felony or a misdemeanor in a particular case." (*M.G., supra,* 228 Cal.App.4th at p. 1277, fn. omitted.) In sum, we see no indication that the Legislature intended subdivision (c)(4) of section 25850 to automatically apply to minors who violate the loaded weapons statute.

The People argue *M.G.* is factually distinguishable because "the minor in *M.G.* argued the record did not support the felony determination. [Citation.] Division One found that the juvenile court 'erred by deeming the offense to be a felony without any proof of or stipulation to facts showing he did not have 'lawful possession of the firearm.' . . . [Citation.] [¶] In the present case, by contrast, the predicate facts found missing in *M.G.* were provided by the evidence . . . . Officer Duffin testified that after the gun was removed from appellant's waistband, [D.D.] never said that he owned the gun, that he had his parent's permission to have the gun, or that he was on his way to participate in a sport that required use of a gun. [Citation.]"

This argument is unpersuasive. First, the *M.G.* court held that the juvenile court "erred by deeming [M.G.'s] offense to be a felony without any proof of or stipulation to facts showing he did not have 'lawful possession of the firearm' *as specifically defined in . . . section 16750 . . . .*" (*M.G., supra,* 288 Cal.App.4th at p. 1278, italics added.) The *M.G.* court further held that section 16750's definition did not categorically exclude minors from lawful possession of a firearm. (*M.G.,* at pp. 1276–1278.) Second, the People point to an *absence* of evidence as support for the prosecution's case, even though the prosecution bore the burden of proving the offense beyond a reasonable doubt, and cite to affirmative evidence that only would establish D.D., as a minor, possessed a firearm or ammunition in violation of sections 29610 and 29650—which under the authority of *M.G.* is insufficient to qualify the offense as a mandatory felony under subdivision (c)(4) of either section 25400 or 25850. Third, although the People indicate on appeal that D.D. had prior juvenile adjudications for burglary and possession of a concealable firearm—facts that might require felony sentencing under subdivision (c)(4) of sections 25400 and 25850—the juvenile court pointedly noted after the close of

14

evidence at the jurisdictional hearing that the prosecution had not presented evidence of prior offenses.

We conclude that the juvenile court erred to the extent it declared D.D.'s offenses to be felonies pursuant to subdivision (c)(4) of either section 25400 or section 25850.

### 4. *D.D.'s Offenses as Wobblers*

Under subdivision (c)(6) of sections 25400 and 25850, the fact the weapon found concealed on D.D.'s person was loaded would make his offenses wobblers if he was not the registered owner. D.D. argued below that subdivision (c)(6) of sections 25400 and 25850 did not apply because the prosecution failed to establish that the gun was not registered to D.D. That issue, however, has not been briefed on appeal and we do not decide it.[8] As noted *ante*, D.D. may have had prior juvenile adjudications requiring felony sentencing under subdivisions (c)(1), (4) or (5) of sections 25400 and 25850, but that evidence was not before Judge Breall at the jurisdictional hearing. The People also suggest that we should affirm on the ground the juvenile court has already exercised its discretion to designate the offenses as felonies. As discussed *ante*, we are not convinced that the court did so. On this record, the offenses may, or may not, be wobblers.

On appeal, D.D. seems to concede that remand is required to allow the juvenile court to determine whether the violations should be penalized as misdemeanor or felony offenses, although he confusingly suggests that the court should make that determination "pursuant to section 29700." We agree that remand is required for the juvenile court to determine the applicable subdivisions of sections 25400 and 25850 and designate each offense as a misdemeanor or felony accordingly.

### C. *Maximum Term of Confinement*[**]

The parties agree that the juvenile court in Alameda County erred when it set a maximum term of confinement at D.D.'s sentencing. A maximum term of confinement

---

[8] We observe that such registration would seem to be legally impossible in light of the complete prohibition in section 29610 on possession of a concealable firearm by a minor.

[**] See footnote *, *ante*, page 1.

must be set if the minor is removed from the physical custody of his parent or guardian, but setting a maximum term when the minor remains in the custody of his parent or guardian has no legal effect. (Welf. & Inst. Code, § 726, subd. (d); *In re Ali A.* (2006) 139 Cal.App.4th 569, 573, 574, fn. 2.) The parties agree that the appropriate remedy is to strike the term from the disposition order. (See *In re A.C.* (2014) 224 Cal.App.4th 590, 592.) We order the maximum term stricken.

### III. DISPOSITION

The order denying D.D.'s motion to suppress and the juvenile court's jurisdictional findings are affirmed. The order declaring the offenses felonies pursuant to subdivision (c)(4) of sections 25400 and 25850, is reversed. The matter is remanded to the juvenile court to designate the offenses as felonies or misdemeanors pursuant to what the court determines to be the applicable subdivisions of sections 25400 and 25850. The maximum term of confinement shall be stricken from the disposition order.

_____

BRUINIERS, J.

WE CONCUR:


_____

JONES, P. J.


_____

NEEDHAM, J.


A140704

Superior Court of San Francisco City and County No. JW13-6403, Susan M. Breall, Judge, and Superior Court of Alameda County, No. SJ11017913, Armando G. Cuellar, Jr.

Suzanne M. Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Ronald E. Niver and Christina vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.