Opinion
COLE, J.
Appellant was convicted of violating Penal Code section 12031, subdivision (a). He argues that, as a matter of law, subdivision (f) of the statute exempted him from liability. We disagree, and affirm the conviction.
Subdivision (a) provides that: “(a) Except as provided in subdivision (b), every person who carries a loaded firearm on his person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor.”
Subdivision (f) provides that: “(f) Nothing in this section shall prevent any person engaged in any lawful business, including a nonprofit organization, or any officer, employee, or agent authorized by such person for lawful purposes connected with such business, from having a loaded firearm within such person’s place of business, or any person in lawful possession of private property from having a loaded firearm on such property.” The facts giving rise to this action are as follows:
Appellant owns and manages a three-building apartment complex located on an acre of land and which is surrounded by fencing. The “victim,” of the age of 19 to 21 years, had been employed to do gardening and clean-up work in exchange for a salary and an apartment. Because he had been annoying the other tenants with loud, late parties, and excessive consumption of alcohol, the victim was discharged and told to remove his personal effects from the apartment. When he returned to pick up his things he did so with three of his friends. A dispute arose with appellant about how much money was due. The victim threatened to “knock [appellant’s] teeth down his throat” if he did *Supp. 4 not immediately pay the amount demanded. The appellant returned to his apartment and telephoned the sheriff. In the meantime, he saw the three men on his driveway and feared they might be tampering with appellant’s car. Fearing for his safety, appellant took along a 22-caliber pistol which he keeps in his apartment. Appellant is 49 years old and suffers from severe rheumatoid arthritis. The victims are athletic young men of large build whose ages run from 19 to 21. As appellant arrived in the driveway he fired his gun once into a pile of dirt.
Appellant argues that subdivision (f) exempts him from liability both because the incident took place on property which constitutes his place of business within the meaning of subdivision (f) and on property which, while “public” within the definition of subdivision (a), nevertheless was his private property within subdivision (f). He argues: “. . . when the Section specifically creates an exception, it obviously must refer to the acts prohibited . . . and not to some other acts such as storing or possessing [a loaded firearm] on a shelf under a counter. Otherwise there would be no need in reason and logic to create the exception and the legislature would be presumed to have done a meaningless act.”
His argument continues: “... To be an offense in the first place [under subdiv. (a)], the acts must occur in a ‘public place or on a public street’... If it were not at least open to the public, no exemption would be necessary for owners of private property, because there would be no offense at all.”
In essence then, the argument is that the exemption under subdivision (f) must be coextensive with the liability created under subdivision (a). An overview of the entirety of section 12031 illustrates why we disagree with appellant’s contention.
The section contains subdivisions lettered (a) through (j). It "is subdivision (a), quoted above, which creates liability. As can be noted from the text of that subdivision, it expressly excludes subdivision (b) from its operation: “Except as provided in subdivision (b). . . .” Subdivision (b) in turn commences with the words “Subdivision (a) shall not apply to any of the following:” and then enumerates 12 classes of persons (such as peace officers and those licensed to carry concealable weapons) exempted from operation of the statute. It is clear, then, that the Legislature expressly and deliberately did make the exemption of *Supp. 5 subdivision (b) coextensive with that of subdivision (a) and that it did so in clear and unmistakable language.
This is not so with the rest of the subdivisions, however.[1] In contrast with subdivisions (a) and (b) are subdivisions (f) through (j). As noted above, (f) states that “Nothing in this section shall prevent any person engaged in any lawful business . . . from having a loaded firearm within such person’s place of business, or any person in lawful possession of private property from having a loaded firearm on such property.” Subdivision (j) is similar. It states: “(j) Nothing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his place of residence, including any temporary residence or campsite.”
Subdivision (g) states: “Nothing in this section shall prevent any person from carrying a loaded firearm . . . while engaged in hunting” (with limitations not relevant here).
Subdivision (h) reads: “(h) Nothing in this section is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that the person or property of himself or another is in immediate danger and that the carrying of such weapon is necessary for the preservation of such person or property.”
And, finally, subdivision (i) states: “(i) Nothing in this section is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest.”
It can thus be seen that none of the subdivisions (f) through (j) expressly create any exemptions from the liability established for violation of subdivision (a). Rather, subdivisions (f) through (j) are legislative statements of the intent of the section not to prevent or preclude particular kinds of conduct specified in those sections.
What is that conduct? When it involves hunting not otherwise prohibited (subd. (g)), or making a lawful defense of one’s person or *Supp. 6 property (subd. (h)), or engaging in the act of making or attempting to make a lawful arrest (subd. (i)) the statute states that nothing in the section shall prevent or preclude the carrying of a loaded firearm. But, when it refers to geographical areas where certain conduct is permitted—“place of business” and “private property” in subdivision (f) and “place of residence including any temporary residence or campsight” in subdivision (j), the statute states that nothing in the section shall prevent any person from having a loaded weapon.
“Carrying” and “having” are not synonymous. “Having” relates to an “act or state of possessing,” Webster’s New International Dictionary, Second Edition, page 1145, while “carrying” refers to the “act or instance of carrying” and the verb “carry” in relevant definition connotes “to convey, or transport . . and “to transfer from one place ... to another.” (Id. at p. 412.)
There is a distinct difference in the two concepts. Speaking generally in the context of statutes concerned with firearms, “carry” or “carrying” has been said to be used in the sense of holding or bearing arms. (In re Bergen (1923) 61 Cal.App. 226, 228 [214 P. 521]; People v. Smith (1946) 72 Cal.App.2d Supp. 875, 878 [164 P.2d 857].[2] We think that “having,” as it appears in subdivisions (f) and (j) of section 12031, is to be read in the sense of “owning, possessing, or keeping,” and we so hold for three reasons:
In the first place, ascribing such a meaning to the word “having” comports with the dictionary definition mentioned above.[3]
In the second place, such a meaning gives practical content to the distinction between “carrying” and “having,” and harmonizes the subdivisions of the statute. Under our reading of the statute, it is proper *Supp. 7 for a person to own, possess or keep a weapon at his place of business or his residence or on his private property, as the case may be, but not to carry it about thereon unless it is necessary to use it under circumstances where use of a firearm is otherwise lawful. Subdivision (h) of section 12031 expressly says as much: “Nothing in this section is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that the person or property of himself or another is in immediate danger and that the carrying of such weapon is necessary for the preservation of such person or property.”
Thus, before one may “carry” a weapon owned, possessed, or kept on the specified premises, there must be a reasonable belief that the person or property of the defendant or another is in immediate danger and that it is necessary to carry the weapon in order to preserve the endangered person or property.
In the third place, such a reading harmonizes with the companion firearm control statutes, Penal Code sections 12025 and 12026. As previously noted, section 12025 makes it an offense to carry concealed upon a person or in a vehicle (without having a license so to do) a firearm capable of being concealed upon the person. Section 12026 provides an exception to section 12025. It states that section 12025 shall not be construed to prohibit a citizen over the age of 18 years (with certain exceptions) “from owning, possessing, or keeping within his place of residence or place of business” a firearm capable of being concealed upon the person. The section also provides that no license to purchase, own, possess or keep a firearm at one’s place of residence or business shall be required. In People v. Frost (1932) 125 Cal.App. Supp. 794 [12 P.2d 1096], this court considered the language of the exception now embodied in section 12026. We there said “By no possible liberality of construction could we hold that any of the acts mentioned in this exception are denounced by the prohibitive parts of the section.” (125 Cal.App. Supp. at p. 796.) That language is a clear indication that “owning, possessing, or keeping” a firearm at one’s place of residence or business does not equate with “carrying” such a weapon.
Thus, appellant’s argument that the language of subdivision (f) must be coextensive with the liability created in subdivision (a) is not well taken.
*Supp. 8 The jury was adequately instructed on the law concerning defense of self and property. The evidence is sufficient to support the verdict that it was not necessary to preserve defendant’s person or property for him to cariy a loaded firearm. That is a factual matter which we may not overturn on this record.
It is not necessary to discuss an additional point raised by defendant which we have considered, but have found to be without merit.
The judgment is affirmed.
Alarcon, J., concurred.

Subdivisions (c), (d) and (e) are irrelevant to the issues discussed herein. Subdivision (c) authorizes peace officers to inspect firearms to determine whether they are loaded. Subdivision (d) deals with the definition of the term “prohibited area.” Subdivision (e) defines when a firearm is deemed to be loaded for the purposes of section 12031.

We have found, no cases expressly defining the word “carries” as used in section 12031. In re Bergen, supra, and People v. Smith, supra, each deal with a predecessor of Penal Code section 12025, a statute which makes it an offense to carry concealed within a vehicle or upon a person a firearm capable of being concealed upon the person. In each of those cases the court adverted to the general definition discussed in our text above. The Smith court differed with the Bergen court in concluding that a defendant could carry a weapon in the absence of actual locomotion (72 Cal.App.2d Supp. at p. 879), a difference not relevant to this case.

As noted, “having” is defined as “an act or state of possessing.” Webster’s New International Dictionary, Second Edition unabridged, page 1145; conversely, one of the definitions of “possess” is “to have and hold as property.” Id. at page 1926, and “keep” is defined, inter alia, as “to hold,” “to preserve or maintain,” “to continue to hold,” “to hold or preserve in any state or tenor.” (Id. at p. 1355.)