Filed 8/31/17 (unmodified opn. attached)
Order modifying published opinion filed 8/25/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CHARLES G., a Person coming under the Juvenile Court Law.<br><br>_____<br><br>THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CHARLES G.,<br><br>     Defendant and Appellant. | No. A149593<br><br>(Contra Costa County<br>Super. Ct. No. J1501141)<br><br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the published opinion filed herein on August 25, 2017, be modified as follows:

Beginning on the first line of page 3, the phrase, "We reject Charles's claim for a simple reason passed over by the parties:" is modified to delete "passed over by the parties." The phrase shall read, "We reject Charles's claim for a simple reason:".

There is no change in the judgment.


Dated:                                     _____, P.J.

1

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. John T. Laettner

Counsel:

Jamie M. Weyand, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Joan Killeen and Amit Kurlekar, Deputy Attorneys General for Plaintiff and Respondent.

Filed 8/25/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CHARLES G., a Person coming under the Juvenile Court Law. _____ THE PEOPLE,      Plaintiff and Respondent, v. CHARLES G.,      Defendant and Appellant. | No. A149593 (Contra Costa County Super. Ct. No. J1501141) |

Charles G. appeals from the juvenile court's jurisdictional order in a Welfare and Institutions section 602 proceeding. Charles argues that we should reverse the court's finding that he carried a concealed firearm in violation of Penal Code section 25400[1] as unlawful because that statute is preempted by a more specific statute that targets minors, section 29610, which the court also found he violated. Charles also argues there was insufficient evidence to support the juvenile court's finding that he willfully resisted, delayed, or obstructed a peace officer in that officer's discharge of his duties in violation of section 148.

We disagree that section 29610 preempts section 25400. We conclude the statutes prohibit different conduct and affirm the juvenile court's findings that Charles violated both statutes. We agree with Charles that there was insufficient evidence that he violated section 148 and therefore reverse this part of the court's ruling.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

1

## BACKGROUND

In December 2015, the Contra Costa County District Attorney filed a petition alleging Charles committed a felony violation of section 29610 for possession of a firearm by a minor; a felony violation of section 25400, subdivision (a)(2) for having a concealed firearm on his person; and a misdemeanor violation of section 148, subdivision (a)(1) for resisting, obstructing or delaying a peace officer in that officer's performance of his duties.

In August 2016, the juvenile court commenced a hearing regarding Charles's motion to suppress evidence under Welfare and Institutions Code section 700.1 and regarding jurisdiction. The court denied the section 700.1 motion and sustained all three counts, but subsequently granted Charles's motion to reduce the two firearm felony violations to misdemeanors. At a subsequent disposition hearing, the court committed Charles to Orin Allen Youth Rehabilitation Facility for a six-month regular program.

Charles subsequently filed a timely notice of appeal.

## DISCUSSION

### I.

### *Section 29610 Does Not Preempt Section 25400, Subdivision (a)(2).*

Charles first argues the juvenile court improperly found he violated both section 25400, subdivision (a)(2), which prohibits a person from carrying a concealed firearm, and section 29610, which prohibits a minor from possessing a firearm capable of concealment on his or her person. He contends the juvenile court should have found he violated section 29610 only because it is the more specific statute and, therefore, preempts section 25400, subdivision (a)(2).[2] The People agree with Charles that the statutes involve the same conduct, but argue that section 29610 does not preempt section 25400 because it does not prescribe lesser punishment. We do not further

---

[2] Charles did not first present this argument in the juvenile court. Nonetheless, we consider it here because it is of a purely legal nature. Charles may "raise for the first time on appeal a pure question of law which is presented by undisputed facts." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

consider the parties' debate on this issue.  We reject Charles's claim for a simple reason passed over by the parties:  a violation of section 29610 is not necessarily or commonly a violation of section 25400, subdivision (a)(2) and, therefore, section 29610 does not preempt section 25400, subdivision (a)(2).

## A.  *General Legal Standards*

" 'Questions of statutory interpretation are, of course, pure matters of law upon which we may exercise our independent judgment.' " (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.)  "[I]f a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86 (*Murphy*).)  This "*Williamson* rule," first formulated in *In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*), is a rule of judicial interpretation that is designed to " 'ascertain and carry out legislative intent.  The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply.' " (*Murphy*, at p. 86.)

The *Williamson* rule is triggered "when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' " (*Murphy*, *supra*, 52 Cal.4th at p. 86.)  On the other hand, we do not assume the Legislature intended to preclude prosecution under the general statute if it "contains an element that is not contained in the special statute, and that element would not commonly occur in the context of a violation of the special statute." (*Id.* at p. 87.)

## B.  *Analysis*

Charles argues that "[l]ike the *Murphy* defendant, [he] was prosecuted under two statutes prohibiting similar conduct—the carrying of concealed firearms."  This is patently untrue; the plain language of the two statutes makes clear they prohibit distinctly different conduct.  Section 29610, states:  "A minor shall not *possess* a pistol, revolver, or other firearm *capable of being concealed* upon the person." (Italics added.)  In other words, section 29610 only prohibits a minor's possession of a firearm, and the firearm need not be actually concealed.

3

On the other hand, section 25400, subdivision (a)(2), states in relevant part: "A person is guilty of carrying a concealed firearm when the person . . . *[c]arries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person.*" (Italics added.) Thus, while section 29610 involves a minor's possession of a firearm that is capable of being concealed, section 25400, subdivision (a)(2) requires that a person carry and conceal the firearm.[3]

The different conduct prohibited by the two statutes distinguishes the present circumstances from those discussed in *Murphy*. There, the defendant caused a stolen vehicle report to be filed with law enforcement based on her false report that her car had been stolen. (*Murphy*, *supra*, 52 Cal.4th at p. 85.) She was later convicted of a felony violation of section 115, which prohibits the filing of a false "instrument" with the State. (*Murphy*, at p. 85.) On appeal, she argued her prosecution under section 115 was precluded by two more specific statutes, including Vehicle Code section 10501, subdivision (a), which prohibits the filing of a false vehicle theft report with law enforcement. (*Murphy*, at p. 85.)

The appellate court concluded that section 115 was a more general statute, as it applied "to a broader range of documents that may be filed in any public office" than did Vehicle Code section 10501. (*Murphy*, *supra*, 52 Cal.4th at p. 88.) The main issue was whether a violation of Vehicle Code section 10501, the more specific statute, which prohibited the filing of a false "report," would necessarily or commonly violate section 115, the more general statute, which prohibited the filing of a false "instrument." (*Murphy*, at p. 89.) The court concluded that regardless of the precise definition and formality of an "instrument," the filing of a false vehicle theft report in violation of Vehicle Code section 10501 would commonly result in a violation of Penal Code section 115. Accordingly, the court, applying the *Williamson* rule, inferred that "the

---

[3] Consistent with this additional concealment requirement, another subdivision of section 25400, subdivision (b), states that a person's carrying of a firearm openly in a belt holster is *not* a violation of section 25400's prohibition against carrying a concealed firearm.

4

Legislature, in specifying that such conduct constitutes a misdemeanor, intended to create an exception to the felony punishment specified in the more general statute." (*Murphy*, at pp. 94–95.)

Here, it is not necessarily the case that section 29610 is the specific statute and section 25400, subdivision (a) the general one. Each addresses specific subject matter, as indicated by the headings under which it is placed in the Penal Code.[4] Section 29610 is contained in a Penal Code article and chapter about a specific subject, i.e., *minors'* possession of handguns. It is within Division 9, entitled "Special Firearm Rules Relating to Particular Persons," which is within Title 4 ("Firearms") of Part 6 ("Control of Deadly Weapons") of the Penal Code. Title 4 also contains section 25400. Section 25400 also is in a division devoted to a more specific subject, "Carrying Firearms," and within a chapter and article that are about carrying a concealed firearm.

Nonetheless, assuming for the sake of argument that, as Charles argues, section 29610 is the more specific statute, the conduct prohibited by that statute and the conduct prohibited by section 25400 are not the same. The "possession" of a firearm by a minor that is prohibited by section 29610 could result in a violation of the prohibition against a person carrying a concealed firearm contained in section 25400, subdivision (a)(2), but we cannot say it would commonly do so. This is in part because possession is far broader than carrying. To "possess" a firearm means "having ' " 'actual control, care and management of' " ' " the firearm. (*People v. Hurtado* (1996) 47 Cal.App.4th 805, 810, fn. 4, quoting approvingly *People v. Mijares* (1971) 6 Cal.3d 415, 420; see also *People v. Martin* (2001) 25 Cal.4th 1180, 1186 [quoting *Mijares*].) Possession may be actual or constructive. (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083–1084.) It does not require that a person be armed or that the weapon to be within a person's immediate vicinity. (*Id*. at p. 1084 [possession "does not mean the weapon must

---

[4] " 'The policy sought to be implemented [by a statute] should be respected [citation], and to this end, titles of acts, headnotes, and chapter and section headings may properly be considered in determining legislative intent.' " (*People v. Romanowski* (2017) 2 Cal.5th 903, 912, quoting *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 489.)

be carried on the defendant's person"]; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030 ["firearm can be under a person's dominion and control without it being available for use"; "possessing a firearm does not necessarily constitute being armed with a firearm"].) Rather, it encompasses having a weapon in one's bedroom or home or another location under his or her control, even when the individual is not present at the location. (See, e.g., *In re Carleisha P*. (2006) 144 Cal.App.4th 912, 915, 918 [weapon and ammunition found in juvenile's bedroom]; *In re Ricardo A*. (1995) 32 Cal.App.4th 1190, 1192 [same]; *In re Jeremy G*. (1998) 65 Cal.App.4th 553, 554–555 [weapons and ammunition found at minor's residence]; *In re Arcenio V*. (2006) 141 Cal.App.4th 613, 615 [guns found inside utility cabinet]; *In re Christopher K*. (2001) 91 Cal.App.4th 853, 855 [pistol in nightstand drawer in motel room].) To "carry," on the other hand, as required by section 25400, requires something more specific. As noted by one court, it means " 'to convey, or transport . . . ;' and 'to transfer from one place . . . to another.' " (*People v. Overturf* (1976) 64 Cal.App.3d Supp. 1, 6, quoting Webster's New Internat. Dict., Second Edition, p. 412.)[5] Notably, the *Overturf* court compared "carrying" to "having," the latter relating to "an 'act or state of *possessing*,' " and concluded that there was "a distinct difference in the two concepts." (*Ibid*., italics added.)

Another important difference in the conduct required by the two statutes concerns concealment. Possession under section 29610 does not require concealment, whereas carrying under section 25400 does. To be sure, possession charges may be based on an act that would also constitute carrying, but the crime of possession reaches a considerably broader range of conduct than that of carrying a concealed weapon.

Not only do sections 29610 and 25400 address different conduct, subdivision (a) address different purposes. In *People v. Harrison* (1969) 1 Cal.App.3d 115 (*Harrison*), the court considered whether, under section 654, an individual could be punished both for

---

[5] More recently, "carry" has been defined as "to take or support from one place to another; convey; transport," "to wear, hold, or have around one," or "to contain or be capable of containing; hold." (<http://www.dictionary.com/browse/carry [as of August 24, 2017>].)

6

violating a statute that prohibited ex-felons from "possessing" a firearm and for simultaneously violating a statute that prohibited "carrying" a loaded firearm in a vehicle or on a public street. (*Harrison*, at pp. 121–122.) In analyzing that issue, the court focused on the difference in the conduct proscribed by the two statutes and the different purposes served by them. Former section 12021 applied to "a person previously convicted of a felony and who own[ed] or ha[d] custody, control or possession of a concealable firearm, loaded or unloaded and whether in a vehicle or not."[6] (*Harrison*, at p. 122.) Former section 12031 applied "to any person and to any firearm, concealable or not, but only if it [was] loaded and he carrie[d] it either on his person or in a vehicle. Neither ownership, possession, custody or control is a statutory element in the unlawful carrying of a loaded firearm in a vehicle." (*Ibid*.) Regarding the purposes of the two statutes, the *Harrison* court observed: "[Former sections 12021 and 12031] strike at different things. One is the hazard of permitting ex-felons to have concealable firearms, loaded or unloaded; the risk to public safety derives from the type of person involved. The other strikes at the hazard arising when any person carries a loaded firearm in public. Here, the mere fact the weapon is loaded is hazardous, irrespective of the person (except those persons specifically exempted) carrying it." (*Ibid*.)[7]

---

[6] A successor statute to section 12021, section 29800, which similarly prohibits a person convicted of a felony from owning, purchasing, receiving or possessing a firearm, is in Division 9 of Title 4 of Part 6 of the Penal Code, the same division as section 29610, which division is entitled, "Special Firearm Rules Relating to Particular Persons."

[7] See also *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1057, distinguishing "mere possession" of a firearm from being armed or using a firearm for purposes of eligibility for resentencing under Proposition 36, noting: " '[T]he threat presented by a firearm increases in direct proportion to its accessibility. Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used.' [Citation.] The same cannot necessarily be said about a firearm that is merely under the dominion and control of a person previously convicted of a felony. For instance, a firearm passed down through family members and currently kept in a safe deposit box by a convicted felon would be under his or her dominion and control, but would present little or no real danger."

Our Supreme Court later disapproved of *Harrison*'s holding that section 654 did not preclude punishments under both of two statutes the defendant violated by the same act. (*People v. Jones* (2012) 54 Cal.4th 350, 360 (*Jones*); see *Harrison*, *supra*, 1 Cal.App.3d at pp. 118–119 [indicating the punishments in that case were based on one act, defendant's having a revolver in a vehicle that police found protruding from a seat during a traffic stop].) However, the Supreme Court did not reject the *Harrison* court's conclusion that carrying and possessing a firearm are two distinct crimes. Specifically, in weighing the arguments for and against prohibiting double punishment under section 654, the Supreme Court stated, "Additionally, former section 12021 criminalized *possessing* the firearm, while former section[] . . . 12031 criminalized *carrying* it. But under the facts of this case, the possession and the carrying were the same act, not two separate acts." (*Jones*, at p. 359.) Notably, in both *Jones* and *Harrison*, the defendants were convicted of both crimes of possession and crimes of carrying, and in neither did the court imply the conviction on both counts posed a conflict in the statutes or any other problem. (See *Jones*, at pp. 352, 353–360; *Harrison*, at pp. 117–118, 121–122.) Moreover, it appears fairly common for defendants to be convicted of both carrying and possession charges in other contexts. (See, e.g., *People v. Reed* (2006) 38 Cal.4th 1224, 1230 [approving multiple convictions of defendant on three separate weapons offenses arising out of same conduct: "possessing a firearm by a felon, carrying a concealed firearm, and carrying a loaded firearm in a public space"]; *People v. Padilla* (2002) 98 Cal.App.4th 127, 131, 137–139 [affirming convictions of possession of firearm by convicted felon and carrying concealed firearm in vehicle].)

These cases reflect that possession under section 29610 and carrying under section 25400, subdivision (a)(2) are separate offenses, that the two sections serve different purposes and that where an adult defendant violates both statutes even by the same act or course of conduct, he may be convicted of both violations.[8] Under these

---

[8] Charles also argues that the reasoning of another "special statute preemption" case involving sections 29610 and 25400, *In re M.G.* (2014) 228 Cal.App.4th 1268, "squarely applies here." The case is inapposite and does not merit further discussion for

circumstances, we cannot conclude that the Legislature necessarily or even likely intended by enacting section 29610 to preclude prosecution of a juvenile under section 25400, subdivision (a)(2). (See *Murphy*, *supra*, 52 Cal.4th at p. 87.)

Therefore, the juvenile court did not err in finding Charles violated both statutes. In light of this conclusion, we do not address the other arguments by the parties regarding whether section 29610 is a special statute that preempts section 25400.

## II.

### *There Is Not Substantial Evidence That Charles Violated Section 148.*

Charles also argues that the juvenile court erred in finding that he violated section 148 by willfully resisting, delaying or obstructing a peace officer in the officer's performance of his duties. Specifically, Charles contends there is not substantial evidence that he "clearly knew that [Officer] Berkley sought to detain him." We agree.

### A. The Proceedings Below

We summarize the pertinent evidence presented, and the juvenile court's ruling made, in the course of the August 2016 contested jurisdictional hearing.

#### 1. *Officer England's Account*

Michael England, a police officer with the City of Oakley, testified that he was on duty in full uniform at approximately 3:22 p.m. on August 4, 2015, in the area of the parking lot of the Oakley Main Street police station. There, a man named Guillermo flagged him down and told him that a woman had approached him and said her home had just been burglarized. Guillermo drove her up the street so she could retrieve her property. When Guillermo approached an intersection on Main Street, the woman got out of the car, pointed to two individuals in the city park and said they had burglarized her. Guillermo then drove to the Main Street police station. Guillermo, as he was talking to England, pointed out two individuals walking on a Main Street sidewalk and said they

a simple reason: it resolved a sentencing issue regarding the application of sections 29610 and 25400, *subdivision (c)(4),* both of which dealt with "possession" (and not subdivision (a)(2), the provision at issue here). (*In re M.G.*, at pp. 1275–1278.) The difference between a person carrying a concealed weapon and a minor possessing a firearm was not at issue in the case. (*Ibid.*)

were the individuals the woman had pointed out. The two individuals were wearing gray shirts, dark-colored jeans and backpacks, and were not doing anything out of the ordinary. England identified Charles as one of them.

England further testified that he radioed to other Oakley police officers about the incident. He then drove to within 30 yards of the two individuals in a marked patrol car, at which time the two ran into a restaurant. England then heard on his radio that another officer had apprehended one of the individuals near the restaurant. England drove across Main Street to the restaurant, where Oakley Police Officer Logan Cartwright handed him a green backpack with a revolver in it.

England also testified that the Main Street police station had a large parking lot in front of it and was located across the street from a shopping center that contained the restaurant, a grocery store, and various other stores and restaurants. There was a parking lot area for customers around these stores.

### 2. *Officer Berkley's Account*

When England made his radio call, Oakley Police Officer Curtis Berkley was on duty, in uniform, inside the Main Street police station. Berkley looked out the window and saw two individuals slowly jog across Main Street, one of whom he identified at the hearing as Charles. The other individual had on a blue backpack. Berkley drove his police car across the street towards the restaurant there. He saw the other individual was detained, but Charles was not. Berkley drove around to the rear of the grocery store next to the restaurant. He saw Charles, without his backpack, look at him and jump over a fence. Other officers later detained Charles.

### 3. *Officer Cartwright's Account*

Oakley Police Officer Logan Cartwright testified that he was on duty on August 4, 2015. He was dispatched to the shopping center across from the Main Street police station to assist in a residential burglary investigation, where he observed that Charles and another individual were detained. Based on what officers told him, he searched the parking lot area for a green backpack with cartoon characters on it. He found a green backpack with Ninja Turtles on it in bushes by a dumpster in the parking lot area behind

10

the restaurant.  A .22-caliber revolver, some paperwork and clothing were in the backpack.  Cartwright gave the backpack and its contents to England.

### 4.  *The Juvenile Court's Ruling*

The juvenile court found the evidence showed beyond a reasonable doubt that Charles had committed the acts alleged in all three petition counts—he had been in possession of a firearm as a minor, carried a concealed firearm on his person, and willfully resisted, delayed or obstructed a peace officer in the performance of the officer's duties.  Regarding the last count, the court found that Charles did not flee from England, but did knowingly flee from Berkley because he turned, saw Berkley and then jumped over the fence by the grocery store.[9]

### B.  Relevant Legal Standards

To establish a person has willfully resisted, delayed or obstructed a peace officer in the performance of the officer's duties, the People must prove (1) the person willfully resisted, delayed, or obstructed a peace officer; (2) when the officer was engaged in the performance of his or her duties; and (3) the person knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.  (§ 148, subd. (a)(1); *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329 (*Muhammed C.*).)  Physical resistance, hiding, or running away from a police officer, as well as refusing an officer's repeated requests, can constitute a violation of section 148. (*Muhammed C.*, at pp. 1329–1330.)

We review the juvenile court's decision for substantial evidence of evidence beyond a reasonable doubt that Charles violated section 148.  (See *People v. Jennings* (2010) 50 Cal.4th 616, 638.)  "Reasonable doubt is . . . ' . . . is not a mere possible doubt;

---

[9] The court also rejected Charles's contention that he was unlawfully detained, ruling that Guillermo's information, Charles's fleeing and his discarding of the backpack provided sufficient reason to detain him.  Charles argues the court erred, and that his flight from Berkley was not a basis for arresting him under section 148 because Berkley lacked reasonable suspicion to detain him at the time.  We do not further address this argument in light of our conclusion that there was not substantial evidence that Charles violated section 148.

because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' " (§ 1096.)

"Substantial evidence" means " 'evidence that "reasonably inspires confidence and is of 'solid value.' " ' " (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) "In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings*, *supra*, 50 Cal.4th at pp. 638–639.)

### C. Analysis

The parties appropriately focus their attention on whether there is sufficient evidence to establish the first element of a section 148 violation—that Charles willfully resisted, delayed, or obstructed a peace officer in the performance of that officer's duties and, specifically, whether, as the juvenile court found, Charles resisted Berkley's effort to detain him. The inquiry centers on Berkley's testimony. He testified that he drove his police car past where the other individual was being detained by a restaurant to the parking lot behind the grocery store next door, where he saw Charles look at him and jump over a fence. There was other testimony that Charles was seen earlier wearing a

12

green backpack and that a green backpack was recovered from a dumpster in the parking lot area behind the restaurant, inside of which was a .22-caliber revolver.

The parties interpret this evidence very differently. Charles asserts that Berkley's testimony is devoid of substantial evidence of evidence beyond a reasonable doubt that Charles had reason to believe Berkley sought to detain him.

The People argue that Charles's claim has no merit because "[n]umerous officers responded to Officer England's report regarding the burglary suspects," and Charles's "flight from the officers and abandonment of his backpack demonstrates his knowledge that they sought to detain him," as does his climbing over a fence when Berkley, dressed in a police uniform, spotted him. According to the People, Charles's "actions clearly demonstrate his awareness that the officer sought to detain him. Officer Berkley was not required to issue verbal commands to [Charles] in the course of the pursuit. In these circumstances, [Charles's] conduct evidenced defiance in the face of the officers' readily apparent desire to talk to him. The record thus establishes that [Charles] knew or should have known that Officer Berkley was a peace officer engaged in the performance of his duties. (*Muhammed C.*, *supra*, 95 Cal.App.4th at pp. 1329–1330.) Because a rational factfinder could conclude that each of the elements of section 148 had been met here, [Charles's] adjudication should be affirmed."

We agree with Charles. Although the People contend that Berkley was "chasing" Charles in the parking lot and that Charles jumped over the fence "to escape apprehension," they cite no evidence to support these specific contentions, and we have not found any in the record. Nothing in the record suggests that Berkley "chased" Charles, said anything to Charles, such as ordering Charles to stop, or flashed his lights, sounded a horn or siren, drove particularly fast or close to Charles or otherwise acted so as to indicate he wanted to detain Charles.

It can be reasonably inferred from the record that Charles abandoned a green backpack with a loaded firearm in it behind a dumpster by the restaurant and sometime later jumped over a fence behind the grocery store when he saw Berkley in his police car. This evidence is not substantial evidence of evidence beyond a reasonable doubt that

13

Charles willfully resisted Berkley's efforts to stop him. A person who seeks to evade police detection does not violate section 148 unless he or she also "willfully resist[ed], delay[ed], or obstruct[ed] a peace officer." (§ 148, subd. (a)(1).) Though Charles's actions may have been suspicious in nature, the juvenile court could not reasonably infer from Charles's abandonment of his backpack that he knew the police were after him. His conduct is just as consistent with a general desire to avoid detection. Individuals in the vicinity of police, including those in possession of potentially incriminating items on their person, are free to go about their business until they understand police are intending to stop them. Charles did not violate section 148 by jogging across the street, abandoning his backpack or jumping a fence to avoid the police unless he knew, or reasonably should have known, the police were pursuing him. The burden was on the People to establish this was the case in the juvenile court below. It did not do so.

There is evidence that Charles's companion was detained outside the restaurant. However, there is no evidence from which it can reasonably be inferred that Charles was with that individual when detention occurred, knew about it or knew police were in the vicinity of the restaurant for the purpose of detaining Charles. Charles and his companion were seen together going into the restaurant; they could have just as easily split up as stayed together after that point and it is speculation to suggest they did one or the other.

There is other evidence to consider in determining whether substantial evidence supports the juvenile court's ruling. Specifically, earlier in the incident, another officer, England, drove his police car within 30 yards of Charles and his companion when they either ran (England's account) or slowly jogged (Berkley's account) into the restaurant. The juvenile court correctly concluded this was insufficient evidence to support a section 148 violation. We conclude that no rational fact finder could conclude beyond a reasonable doubt from this evidence that Charles knew England wanted to stop him, particularly when all were in the vicinity of a police station, where one would expect to see police cars.

14

Under these circumstances, the paucity of evidence that Berkley took direct action to stop Charles by the fence behind the grocery store is fatal. This is far different from the evidence offered in *Muhammed C.*, relied on by the People. There, the police arrested defendant for willfully delaying the officers' performance of their duties when defendant continued to speak to a suspect in the back seat of a police car after police ordered him away. (*Muhammed C.*, *supra*, 95 Cal.App.4th at p. 1329.) Such direct police action is lacking in the present case.

In short, there is not substantial evidence of evidence beyond a reasonable doubt that Charles knew police wanted to stop him and therefore, we must reverse the court's sustaining of the petition allegation that Charles violated section 148, subdivision (a)(1).

## DISPOSITION

We reverse the juvenile court's ruling that Charles violated section 148, subdivision (a)(1). The court's jurisdictional ruling is otherwise affirmed. The court's disposition order is vacated and this matter remanded to the juvenile court for a new disposition order that is consistent with this opinion.


_____
STEWART, J.


We concur.


_____
KLINE, P.J.



_____
RICHMAN, J.


*In re Charles G.* (A149593)


15

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. John T. Laettner

Counsel:

Jamie M. Weyand, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Joan Killeen and Amit Kurlekar, Deputy Attorneys General for Plaintiff and Respondent.