Filed 6/16/25  P. v. Garcia CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL JOSEPH GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B329596<br>(Super. Ct. No. VA142897)<br>(Los Angeles County) |

Daniel Joseph Garcia appeals from the judgment after a jury convicted him of first degree murder (Pen. Code,[1] §§ 187, subd. (a); 189, subd. (a); count 11); premeditated attempted murder (§§ 664, 187, subd. (a), count 12)[2]; six counts of firearm

---

[1] Undesignated statutory references are to the Penal Code.

[2] The verdict form and oral pronouncement of judgment reflect count 12 as attempted murder.  Because the abstract of judgment incorrectly identifies count 12 as a conviction for "shooting at an inhabited dwelling" (§ 246), we order the trial

possession by a felon (§ 29800, subd. (a); counts 1, 4, 9, 14, 15, and 17); two counts of unlawful possession of ammunition (§ 30305, subd. (a)(1); counts 5 and 7); assault with a semiautomatic firearm (§ 245, subd. (b); count 8); resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1); count 10); and shooting at an inhabited building (§ 246; count 13). The jury also found true numerous firearm-related enhancements. (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c), (d)[3].) The trial court sentenced Garcia to a total of 25 years to life on count 11 plus 20 years for the firearm enhancement (§ 12022.53, subd. (c)), a consecutive life term with the possibility of parole after seven years on count 12 plus 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)), and a consecutive and aggregate determinate term of 27 years for the remaining convictions.

Garcia contends there was insufficient evidence to support his conviction for firearm possession by a felon (§ 29800, subd. (a)) in count 17. He also contends the trial court erred in admitting a portion of a call he made from jail, requiring reversal and a new trial on count 8 for assault with a semiautomatic firearm (§ 245, subd. (b)), count 11 for first degree murder (§ 187, subd. (a)), count 12 for attempted murder (§§ 664, 187, subd. (a)), and count 13 for shooting at an inhabited building (§ 246). We

court to correct the abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

[3] The jury found the section 12022.53, subdivision (b) enhancement true for counts 11 and 12, but it is not reflected in the abstract of judgment. We order the trial court to correct the abstract and forward it to the Department of Corrections and Rehabilitation.

order corrections to the abstracts of judgment.  In all other respects, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

*January 26, 2017, shooting (counts 11, 12, and 13)*

Garcia was a member of the Varrio Norwalk gang with the moniker of "Calacas."  His gang's rivals included the Chivas and Arta gangs.  Garcia's girlfriend was C.M.  In 2016, law enforcement located a firearm and ammunition in a vehicle driven by Garcia.  On another occasion, they located another firearm and ammunition on Garcia's person.

On January 26, 2017, Jose Lopez and Carlos Jimenez were drinking beer after midnight in front of their house when shots were fired at them.  Both were hit.  Jimenez died.  Neither were affiliated with gangs.  An occupied house next door to Lopez and Jimenez's residence sustained exterior and interior bullet damage.  The shooting occurred within the claimed territory of the rival Chivas and Arta gangs.

In the early morning hours on January 26, Garcia returned home.  He was pacing, shaking, and appeared "jittery" and "paranoid."  He told C.M. that he had shot and hurt a "paisa," Spanish slang for a blue-collar Spanish-speaking Mexican immigrant.  Garcia also said he had shot an innocent man who was not a gang member.

*February 7, 2017, shooting (count 8)*

On February 7, 2017, Garcia was a front passenger in a car that approached Destiny Williams and Rene Montes who were walking on the street.  Montes had rival Arta gang tattoos on his head, neck, and hands.  Garcia rolled down his window and shot at them.  Williams later identified Garcia as the shooter from a six-pack photograph lineup.  She identified Garcia as "Calacas"

3

and with the first name of "Daniel." Willams said Garcia was affiliated with the Varrio Norwalk gang.

Several hours after the shooting, a sheriff's deputy conducted a traffic stop of a car with Garcia in the front passenger seat. Garcia tried to conceal a firearm in his waistband, ran from the car, and jumped over a fence of a residence known to be a safe house for Varrio Norwalk gang members. Law enforcement was unable to apprehend Garcia.

*Search of J.M.'s bedroom (count 17)*

J.M., C.M.'s sister, lived with their grandmother. She "regularly" kept her bedroom door locked when she was not in the room. In early 2017, Garcia and C.M. visited J.M. Garcia handed J.M. a box containing a firearm and ammunition. He told her "to hold it until he finds somewhere else to put it." Garcia also said, "I just need to leave something in your room until I can move it somewhere else." Garcia had not previously asked J.M. to hold anything for him.

On May 11, law enforcement searched J.M.'s grandmother's residence. They gained entry into J.M.'s bedroom by breaking in and located a case containing a firearm and ammunition. Garcia was not present when the firearm was found. Ballistic testing showed that it was one of the same firearms that had been discharged on January 26 when shots were fired at Lopez and Jimenez.

*Jury trial evidence and verdict*

At Garcia's jury trial, a gang expert for the prosecution testified that gang members may ask persons, including non-gang members, to store firearms in a "safe house." The firearms may have been used to commit shootings. And, the persons asked to store them are "someone who is close to them.

4

Someone that they trust." The expert also testified that gang members would "still have access to [the firearms] if necessary." On cross examination, the defense asked whether gang members "age out" of a gang.

Prior to trial, the prosecutor moved to dismiss the gang allegation enhancements (§ 186.22, subd. (b)(1)) attached to counts 8, 11, 12, and 13 prior to trial. The prosecutor nonetheless moved to admit a recording of a portion of a jail phone call Garcia made to a fellow Varrio Norwalk gang member on November 20, 2017. They discussed a rival gang that had shot at police officers and shot at a house affiliated with the Varrio Norwalk gang. Garcia said, "I can't wait to get out now. They're going to be handicapped fool. Watch." He continued, "I can't wait to get out, fool. Then nothing goes away, fool. You need to press that line like look, they came like this. They went straight to Chad's house [a rival gang member]. That fool needs to get fucking charged, whacked, all that shit fool." The prosecutor claimed this evidence was relevant to prove Garcia's motive for the shootings, to show he was "still remaining active in the gang war," and to rebut the claim that gang members "age out" of gangs.

Defense counsel objected to admitting the jail call based on relevancy and Evidence Code section 352. Counsel said the jury could have reasonable doubt about Garcia's guilt for the charged offenses but have "reservations about that [sic] thinking that [Garcia] may get out and go do something against Chivas, as he insinuates on the phone call with somebody on the outside." Over the defense objection, the trial court admitted the recording. It reasoned the recording was admissible under Evidence Code section 352 and any prejudice was not substantially outweighed by its probative value.

The jury convicted Garcia of first degree murder (§§ 187, subd. (a), 189, subd. (a); count 11); premeditated attempted murder (§§ 664, 187, subd. (a), count 12); six counts of firearm possession by a felon (§ 29800, subd. (a); counts 1, 4, 9, 14, 15, and 17); two counts of unlawful possession of ammunition (§ 30305, subd. (a)(1); counts 5 and 7); assault with a semiautomatic firearm (§ 245, subd. (b); count 8); resisting, delaying, or obstructing an officer (§ 148, subd. (a)(1); count 10); and shooting at an inhabited building (§ 246; count 13). The jury also found true enhancements of personal and intentional discharge of a firearm (§ 12022.53, subds. (b), (c)) for murder, personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subds. (b), (c), (d)) for attempted murder, and personal use of a firearm (§ 12022.5, subd. (a)) for shooting at an inhabited dwelling.

The trial court sentenced Garcia to prison for 25 years to life plus 20 years on count 11, a life sentence with the possibility of parole after seven years plus 25 years to life on count 12,[4] a consecutive and aggregate determinate term of 27 years on counts 1, 4, 5, 7, 8, 10, 13, 15, and 17, and a concurrent term of two years on count 9.

---

[4] For count 12, the conviction for attempted murder, the abstract of judgment incorrectly reflects a sentence of "7 years to life" for attempted murder. This sentence is not authorized by statute. The punishment for attempted "willful, deliberate, and premeditated murder" is "imprisonment in the state prison for life with the possibility of parole" (§ 664, subd. (a)), not seven years to life. The abstract should also reflect this indeterminate term is tied to count 12, not count 13. We order the trial court to correct the abstract and forward it to the Department of Corrections and Rehabilitation.

6

## DISCUSSION
### *Jail phone call*

Garcia contends he is entitled to reversal and a new trial on counts 8, 11, 12, and 13 because the court erred in admitting a portion of a jail call from November 2017. We are not persuaded.

Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is defined as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice. (Evid. Code, § 352.) The trial court possesses " ' "considerable discretion" ' " in determining relevancy assessing whether probative value is substantially outweighed by possible prejudice. (*People v. Miles* (2020) 9 Cal.5th 513, 587.) We review these rulings for an abuse of discretion. (*People v. Hardy* (2018) 5 Cal.5th 56, 87.)

Evidence of gang motive is not limited to crimes where gang enhancements are alleged. (*People v. Chhoun* (2021) 11 Cal.5th 1, 31.) But our Supreme Court has cautioned that trial courts must carefully scrutinize gang-related evidence because of its potentially inflammatory impact on the jury. (*People v. Williams* (1997) 16 Cal.4th 153, 193). "[G]ang evidence, even as it relates to the defendant, may be so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 (*Hernandez*).)

Here, we need not decide whether the jail call should not

7

have been admitted. (*Hernandez, supra*, 33 Cal.4th at 1049.) And we need not decide whether the limiting instruction given (CALCRIM No. 1403) would remedy the substantial danger of undue prejudice. Based on the overwhelming evidence of Garcia's guilt, in our view it is not reasonably probable that Garcia would have received a more favorable outcome even assuming error. (*People v. Watson* (1956) 46 Cal.2d. 818, 836.) As to the February 7 shooting (count 8 for assault with a semiautomatic firearm), Williams identified Garcia as the shooter and a Varrio Norwalk gang member. And later that day, law enforcement conducted a traffic stop and Garcia tried to conceal a firearm in his waistband, fled, and jumped over a fence of a known "safe house" for Varrio Norwalk gang members. The jury could have inferred a consciousness of guilt based on Garcia's acts of concealing a firearm and fleeing from law enforcement. The jury was so instructed.

As to the January 26 shooting (count 11 for first degree murder, count 12 for attempted murder, and count 13 for shooting at an inhabited building), Garcia admitted to C.M. that he had shot and hurt a "paisa" and that he shot an innocent man who was not a gang member. Moreover, the firearm located inside J.M.'s bedroom was one of the same firearms that had been discharged on January 26. Law enforcement also located a firearm in Garcia's neighbor's backyard that had been discharged on January 26. A DNA sample included Garcia as a possible contributor with a random match probability of 1 out of 180 quadrillion. There was no miscarriage of justice requiring reversal. (Cal. Const., art. VI, § 13.)

*Sufficiency of the evidence*

Garcia contends his conviction for count 17 must be reversed because there was insufficient evidence that he possessed or exercised dominion and control over the firearm located inside J.M.'s room on May 11, 2017. We are not persuaded.

"In reviewing the sufficiency of the evidence to support a conviction, we determine " 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' " (*People v. Misa* (2006) 140 Cal.App.4th 837, 842 (*Misa*).) We review the evidence in the light most favorable to the judgment and draw all inferences in support of it to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. (*Ibid.*) "The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions." (*Ibid.*) We do not reweigh evidence or revaluate credibility. (*In re Charles G.* (2017) 14 Cal.App.5th 945, 957 (*Charles G.*).)

Penal Code section 29800, subdivision (a)(1), prohibits a felon from possessing a firearm. Possession may be actual or constructive. (*Charles G.*, *supra*, 14 Cal.App.5th at p. 951.) An individual " 'has actual possession when the weapon is in [their] immediate possession or control,' " i.e., when they are holding or touching it. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052 (*Blakely*).) " 'To establish constructive possession, the prosecution must prove a [person] knowingly exercised a right to control the prohibited item, either directly or through another person.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 132.)

9

"Possession may be shared with others." (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417, disapproved on other grounds by *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6.) "A firearm can be under a person's dominion and control without it being available for use." (*Blakely*, at p. 1052.) "[A] convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*People v. White* (2014) 223 Cal.App.4th 512, 524.)

Substantial evidence supports Garcia constructively possessed the firearm found in J.M.'s bedroom. Garcia asked J.M. to store the firearm in her bedroom until he could find another storage location for it. He told her, "I just need to leave something in your room until I can move it somewhere else." A gang expert testified that gang members store firearms in "safe house[s]" where they can access the firearms "if necessary." Based on this evidence, the jury could reasonably conclude that Garcia exercised control or dominion of the firearm through J.M. (See *Blakely*, *supra*, 225 Cal.App.4th at p. 1052.)

The jury also could have reasonably rejected Garcia's theory that he had abandoned the firearm because he had access to other firearms. "[R]eversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) "Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict,' the conviction will not be reversed." (*Misa, supra*, 140 Cal.App.4th at p. 842.) We reject Garcia's sufficiency of the evidence claim.

## DISPOSITION

Count 12 in the abstract of judgment sentence shall be corrected to reflect a conviction for premeditated attempted murder (§§ 664, 187, subd. (a)) and the sentence is modified to life with parole. (§ 1260.) For counts 11 and 12, the abstract of judgment shall also reflect an enhancement under section 12022.53, subdivision (b). The clerk of the superior court shall prepare amended abstracts of judgment and forward copies to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Joseph R. Porras, Judge

Superior Court County of Los Angeles

_____

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.